# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FISH NET, INC., trading as THAT** | : | **CIVIL ACTION** |
| **FISH PLACE - THAT PET PLACE,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 09-5466** |
| | : | |
| **PROFITCENTER** | : | |
| **SOFTWARE, INC., et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                    **March 30, 2011**

In this diversity case, the plaintiff brings an action against the defendants alleging claims for fraud, breach of contract, breach of warranty, and unjust enrichment. The defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I will grant the motion in part and deny it in part.

## I. BACKGROUND[1]

The plaintiff is in the business of selling a wide variety of pet goods throughout the United States both wholesale and directly to customers through retail outlets, mail-order catalogs, and online channels. See Am. Compl. ¶ 2. Defendant ProfitCenter Software, a wholly-owned subsidiary of Defendant Systemax, Inc., purports to sell products involving

---

[1] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in its favor.

customized hardware and software solutions to help merchants manage inventory, sales, website, and customer relations. Id. at ¶ 4. It also purports to provide services relating to the system and its own expertise in accounting, point of sale, product management, expense management, and business intelligence. Id. Defendant Systemax routinely markets ProfitCenter's products and services by reference to Systemax's own resources and experience. Id. at ¶ 6.

On December 23, 2005, the plaintiff and Defendant ProfitCenter entered into a "Software Master Agreement" and a "Professional Services Agreement." Id. at 14. The plaintiff alleges that these Agreements were signed after receiving repeated assurances by ProfitCenter's CEO that its application was the backbone of the Systemax operations. Id. at ¶ 15. The Agreements contain warranties of workmanship and services consistent with "general industry standards." Id. The Software Master Agreement promised that ProfitCenter would make its service available to the plaintiff, and it defined that service as "online customer relationship management, billing, order processing, web management, product management, data analysis and other ERP and CRM services." See Document #1 at 25. The Agreements also represent and warrant that ProfitCenter will provide the service in a manner consistent with general industry standards and warrant that the professional services will be performed in a professional and workmanlike manner, in accordance with generally accepted industry standards. See Am. Compl. ¶¶ 81, 90.

The service, provided by ProfitCenter's system, launched on January 10, 2007. It was allegedly a catastrophe for the plaintiff: the system duplicated customer charges, failed to fully process orders, inaccurately calculated sales tax, incorrectly priced items, failed to obtain and store accurate customer information, failed to accurately report inventory, failed to refund erroneous charges, failed to process online orders, and failed to produce financial and accounting information sufficient for the plaintiff to apply for loans or to complete state and federal tax filings. Id. at ¶¶ 17-27, 53-54, 59-66, 69, 71.

Throughout the implementation of the Agreements, ProfitCenter made numerous promises, representations and warranties about the functionality of the system. When the system repeatedly crashed, it made multiple representations about the support ProfitCenter would provide and the alleged minor nature of the problems. Id. at ¶¶ 47-51, 52-58.

By July 2007, the plaintiff was ready to abandon the project and hire a new service provider. Id. at ¶ 34. In response, Defendant Systemax, the owner of ProfitCenter, intervened and made multiple representations to the plaintiff about the support it would provide and about its abilities to rectify the problems with the system. Id. at ¶¶ 35-38. Systemax's assurances induced the plaintiff to stay with ProfitCenter's service and to enter into an addendum to their Agreements. Id. at ¶¶ 35-46; see also Document #1 at 40-42.

In October 2007, the parties discussed problems raised by the plaintiff's

bank/lender regarding the plaintiff's inability to provide adequate financial documentation. At a meeting in December 2007, the defendants acknowledged their responsibility for the problems and promised the plaintiff and its bank/lender that they were close to resolving those problems. Id. at ¶¶ 59-69. The amended complaint alleges that the defendants have failed to perform on these promises, causing extraordinary damage to the plaintiff's business. Id. at ¶¶ 69, 89-93, 99-105.

The amended complaint also alleges that it has become obvious that the defendants' system and service ultimately never had the capabilities represented by the defendants both before and after execution of the Agreements, and that the representations made by the defendants as to the nature of the problems were false.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

In its amended complaint, the plaintiff alleges a claim for fraud against ProfitCenter, two claims for breach of contract against ProfitCenter, a claim for breach of warranty against ProfitCenter, a claim for breach of contract against Systemax, and a claim for unjust enrichment against both defendants. The defendants have moved for the dismissal of the entire amended complaint.

### A. Fraud – Count I

The defendants argue that the plaintiff's claim for fraud is barred by the statute of

limitations for such claims, by the "gist of the action" doctrine, and by the parol evidence rule. Pennsylvania has adopted an expansive definition of fraud: "It is well established that fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991). The Supreme Court of Pennsylvania has held that "fraud is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." Thomas v. Seaman, 304 A.2d 134, 137 (Pa. 1973). The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement. Commonwealth v. Monumental Properties, Inc., 329 A.2d 812, 829 (Pa. 1974). Nevertheless, a party alleging fraud has the burden of proving the same by clear and convincing evidence. Estate of Bosico, 412 A.2d 505, 506 (Pa. 1980).

### 1. Statute of Limitations

The defendants argue that the plaintiff's claim for fraud should be dismissed as untimely because this case was filed on November 16, 2009, long after the expiration of the statutory period in which a claim for fraud must have been brought. I do not agree.

The Pennsylvania statute of limitations for actions based in fraud is two years. See 42 Pa.C.S. § 5524(7). The discovery rule applies in Pennsylvania when the underlying cause of action sounds in fraud. Thus, the limitations period begins to run when the

"plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim." Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 148 (3d Cir. 1997). A plaintiff reasonably should have learned of a claim's existence when he "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." Melley v. Pioneer Bank, 834 A.2d 1191, 1201 (Pa. Super. 2003). "Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Id.

The Supreme Court of the United States recently re-affirmed that the very purpose of the discovery rule is to toll the statute of limitations until the fraud, not the injury, is discovered:

> The rule arose in fraud cases as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a complete and present cause of action. This Court long ago recognized that something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded. Otherwise, the law which was designed to prevent fraud could become the means by which it is made successful and secure. Accordingly, where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*.

Merck & Co. v. Reynolds, 130 S. Ct. 1784, 1793-794 (2010) (emphasis in original).

Here, the defendants argue that the plaintiff's fraud claim is untimely because it was filed over two years after the plaintiff first became aware of the injury caused by the

7

new system. According to the amended complaint, the plaintiff first became aware of

"debilitating performance problems" in October 2006, and then in December 2006 more

problems and missing features were identified. See Am. Compl. ¶¶ 17, 20. In January

2007, "it became clear that there were [sic] a significant number of failures within the

system," and "failures of the PCS System and PCS Service continued to cause extensive

damage to Plaintiff Fish Net." Id. at ¶¶ 23, 55. These allegations, however, are not

automatically connected to or suggestive of fraudulent activity. The plaintiff alleges that

it continued to rely upon the defendants' representations, and was even induced to remain

as a client of the defendants into 2008.

While the plaintiff may have been first aware of problems and deficiencies with

the new system in late 2006, it is alleged that the plaintiff did not begin to suspect any

fraudulent activity until December 2007, when it possessed sufficient critical facts to put

it on notice of that possibility. Id. at ¶ 62. Thus, the statute of limitations did not begin to

run until the date the plaintiff discovered the fraud, i.e., December 2007. Accordingly,

the plaintiff's claim for fraud, filed on November 16, 2009, is timely.

### 2. Gist of the Action Rule

The defendants next argue that the plaintiff's fraud claim is barred by the gist of

the action doctrine.[2] I must agree. The gist of the action doctrine "is designed to

---

[2] The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine. However, both the Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted it would do so. See Williams v. Hilton Group PLC, 93 Fed.

(continued...)

maintain the conceptual distinction between breach of contract claims and tort claims. As

a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of

contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14

(Pa. Super. Ct. 2002). The distinction has been explained as follows:

> Although they derive from a common origin, distinct
> differences between civil actions for tort and contractual
> breach have been developed at common law. Tort actions lie
> for breaches of duties imposed by law as a matter of social
> policy, while contract actions lie only for breaches of duties
> imposed by mutual consensus agreements between particular
> individuals. To permit a promisee to sue his promisor in tort
> for breaches of contract *inter se* would erode the usual rules
> of contractual recovery and inject confusion into our
> well-settled forms of actions.

Id. In general, Pennsylvania courts are cautious about permitting tort recovery based on

contractual breaches. Id. In some circumstances, it is possible that a breach of contract

may give rise to an actionable tort. To be construed as in tort, however, the wrong

ascribed to the defendants must be the gist of the action, the contract being collateral. Id.

Where tort claims are "inextricably intertwined" with the contract claims, the gist of the

action is contractual, and the tort claims should be dismissed. Id. at 21. The gist of the

action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2)

where the duties allegedly breached were created and grounded in the contract itself; (3)

where the liability stems from a contract; or (4) where the tort claim essentially duplicates

---

[2](...continued)
Appx. 384 (3d Cir. 2004), and eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. 2002).

a breach of contract claim or the success of which is wholly dependent on the terms of a contract. Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. 2005).

The gist of the action test requires the court "to focus on the substance of the dispute, or, more colloquially, to ask the question, 'What's this case really about?'" Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010). The doctrine deals less with specific enumerated "duties" than with the parties' conduct as it relates to the contract and the tort alleged. Id. Here, the defendants argue that the Agreements between the parties are central to, and form the very basis of, the plaintiff's claim for fraud. The amended complaint alleges that the Agreements were signed after receiving repeated assurances that ProfitCenter's application was the backbone of the Systemax operations. Further, during the contract process, ProfitCenter's CEO repeatedly credited his company for fueling the tremendous e-commerce growth at Systemax. See Am. Compl. ¶ 15. As the basis for its claim for fraud, the plaintiff relies on these assurances, accreditations, and other alleged misrepresentations from ProfitCenter. The following paragraphs of the amended complaint re-enforce the centrality of the Agreements to the plaintiff's claim for fraud:

> 44.    The above misrepresentations, and other similar misrepresentations, made before and after the Agreements were executed, dramatically exceed and oversold the scope of the written Agreements. ...

> 49.    Throughout the implementation phase of the Agreements, officers and agents of Defendant ProfitCenter … repeatedly made representations and

10

warranties regarding the PCS System and PCS Service [including] …

58. Despite repeated representations and warranties, both inside and outside the scope of the Agreements … the system did not and has not functioned at a level anywhere near that represented and warranted …

75. As described in this Complaint, Defendant ProfitCenter repeatedly made oral and written representations … about the design and function of ProfitCenter's service and product, and about Defendant ProfitCenter's willingness and ability to cure problems that arose, that have been revealed to be completely false.

76. Those representations, and other similar representations, were material to the execution and continuance of the Agreements between Plaintiff Fish Net and Defendant ProfitCenter, were made falsely with knowledge and/or reckless disregard of their falsity, with the intent of misleading Plaintiff Fish Net, upon which Plaintiff Fish Net relied, and which resulted in the above Agreements …

77. But for the above misrepresentations, Plaintiff Fish Net would not have entered into the Agreements with Defendant ProfitCenter …

Id. at ¶¶ 44, 49, 58, 75, 76, 77.  By relying on these as the basis for its claim for fraud, the plaintiff also concedes, however, that such assurances, accreditations and representations were offered coincident with the negotiation of the Agreements, and directly emanate from the Agreements.  Id.  Thus, the assurances, accreditations, representations, warranties, and oral promises allegedly made by ProfitCenter prior to, and coincident with, the signing of the Agreements are not independent torts representing the gist of the

plaintiff's action. Rather, they are entirely reliant upon the Agreements for effect. Because the Agreements are central to, and form the basis of, the plaintiff's allegations of fraud, the claim is "inextricably intertwined" with the contract claim. Accordingly, I will grant the defendant's motion as to Count I, and dismiss it without addressing the defendant's last remaining argument.

**B. Breach of Contract – Counts II, III, and V**

The defendants argue that the plaintiff's claims for breach of contract fail because the amended complaint does not identify explicit contractual provisions that have been breached. Instead, they contend, the amended complaint refers to representations, promotional materials, product demonstrations, and assurances that allegedly were made by ProfitCenter regarding the anticipated performance and functionality of the equipment and service sold pursuant to the Agreements. See Am. Compl. at ¶¶ 20, 26, 58. The defendants further argue that because none of the alleged representations, assurances, promotional materials, or product demonstrations were mentioned in the Agreements, they are explicitly rejected by the Agreements' integration clauses. Accordingly, they contend, the examples of duties breached by ProfitCenter can only be regarded as obligations explicitly rejected by, or at the least, not included in the Agreements. I do not agree.

In Pennsylvania, the elements of a claim for breach of contract include: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the

contract; and (3) resultant damages.  Omicron Sys. v. Weiner, 860 A.2d 554, 564 (Pa.

Super. 2004).  To proceed here, the plaintiff's amended complaint "must satisfy . . . the

simple requirements of Rule 8(a)."[3]  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513

(2002).  Following the Supreme Court's decision in Twombly, Rule 8(a) now requires

that the facts in a complaint plausibly suggest that the pleader is entitled to relief.

Wilkerson v. New Media Tech. Charter Sch., 522 F.3d 315, 321 (3d Cir. 2008).

Accordingly, to state a claim, the plaintiff must state enough factual matter, taken as true,

to suggest the required element, which does not impose a probability requirement at the

pleading stage, but instead simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element.  Phillips v. County of

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

### 1. Against Defendant ProfitCenter – Counts II and III

A review of the relevant paragraphs in the plaintiff's amended complaint

demonstrates that the plaintiff has, in fact, presented its claims for breach of contract in a

short and plain manner consistent with Rule 8 of the Federal Rules of Civil Procedure.  In

Count II, i.e., paragraphs 80 through 88 of the amended complaint, the plaintiff describes

with sufficient specificity the alleged breach of the Software Master Agreement,

---

[3]  Rule 8(a) of the Federal Rules of Civil Procedure provides that a "pleading that states a
claim for relief must contain: (1) a short and plain statement of the grounds for the court's
jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional
support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief;
and (3) a demand for the relief sought, which may include relief in the alternative or different
types of relief."

including the defendant's unauthorized use and sharing of the plaintiff's confidential

information in an attempt to solicit new customers. In Count III, i.e., paragraphs 89

through 93, the plaintiff describes with sufficient specificity the breach of the

Professional Services Agreement. The plaintiff describes several instances of when the

defendant allegedly did not "provide the service in a manner consistent with general

industry standards" or "in accordance with the online PCS help documentation." Id. at ¶

81. It also alleged that ProfitCenter did not provide its professional services "in a

professional and workmanlike manner, in accordance with generally accepted industry

standards." Id. at ¶ 90 (quoting the Professional Services Agreement). An industry

standard "online customer relationship management, billing, order processing, web

management, product management, data analysis and other ERP and CRM services"

would not be expected, for example, to duplicate customer credit card charges. Instead,

one would expect that it would fully process customer orders, would correctly calculate

sales tax, would correctly reflect the prices the merchant intends to charge, would process

refund checks, would retain complete customer information, would interface correctly

with the merchant's inventory, would accurately process online orders, and would

generate financial and accounting information sufficient for a merchant to complete their

state and federal taxes. According to the amended complaint, ProfitCenter's service did

none of the above. Id. at ¶¶ 23-33, 54. It is further alleged that ProfitCenter failed to

provide "professional services … in a professional and workmanlike manner" to fix the

service's problems and make the system function appropriately. Id. at ¶¶ 16-29, 47-48, 52-54, 58, 89-93.

As the defendant argued in its motion to dismiss Count I, the plaintiff's claim for fraud was more properly construed as a contractual matter rather than as a tort. In fact, the gist of the action doctrine barred consideration of the fraud claim because the defendant's alleged misconduct was not extraneous to the contract, but stemmed from its express terms. The plaintiff alleges to be dissatisfied with ProfitCenter's system and service provided. Dissatisfaction with the defendants' performance is essentially an allegation that the defendants breached their contractual duties. Accordingly, at this early stage of the litigation, because the facts pled to support the claim for fraud are also sufficient to support the claims for breach of contract, I will deny Defendant ProfitCenter's motion to dismiss Counts II and III.

### 2. Against Defendant Systemax – Count V

The amended complaint alleges that Systemax promised the plaintiff that it would stand behind and fix all of the problems created by ProfitCenter. See Am. Compl. ¶ 100. It also alleges that the plaintiff relied on Systemax's oral promises when it decided to continue its business relationship with ProfitCenter. Id. at ¶ 101. In moving for dismissal, Systemax argues that the plaintiff's claim for breach of contract fails to establish that a contract actually existed. Specifically, Systemax characterizes the plaintiff's assertions as articulating a "conditional gift," where Systemax promised to

stand behind and fix problems with the system if they persisted, but received no consideration to promise such conduct and received no benefit from such a gratuitous offer.

At this stage of the litigation, I hesitate to agree with Systemax that no oral contract was formed during that meeting in July 2007 between Systemax and the plaintiff. Systemax's claim that it received no consideration for its promise to stand behind and fix problems with ProfitCenter's system and service is weakened by the plaintiff's allegation that because the business relationship continued between the plaintiff and ProfitCenter, Systemax was able "to refer to the plaintiff's business while conducting its own promotion of both Defendants Systemax and ProfitCenter's combined product and service lines, such as at trade shows." Id. at ¶ 39. Furthermore, when Systemax allegedly induced the plaintiff into continuing its business relationship with ProfitCenter, ProfitCenter had recently lost many key employees including its CEO. Id. at ¶ 34. Systemax assured the plaintiff that it was directly involved in hiring a new CEO for ProfitCenter, and was assembling a new team which would repair the plaintiff's relationship with ProfitCenter. Id. at ¶ 36. When the plaintiff decided not to use another provider and remain with ProfitCenter, it undoubtedly affected ProfitCenter's jeopardized financial situation in a positive way which, in turn, would have had the same effect on Systemax's balance sheet. As alleged in the amended complaint, Systemax promised the plaintiff that if the plaintiff stayed with ProfitCenter, Systemax would stand behind and

fix any problems with ProfitCenter's system and service; and in turn, Systemax would benefit as the corporate owner of ProfitCenter both financially and professionally through its promotion in the business community. Viewing these facts in the light most favorable to the plaintiff and accepting them as true for purposes of this motion, I find that Systemax, as the corporate owner of ProfitCenter, received consideration, i.e., "something of value," when it induced a large business entity such as the plaintiff to remain as a client of Systemax's subsidiary. Because the plaintiff alleges that Systemax refused to honor its many promises to stand behind its subsidiary and correct all of its problems, see id. at ¶ 51, the plaintiff has sufficiently stated enough factual matter to raise a reasonable expectation that further discovery will reveal evidence to support its claim for breach of contract against Systemax. Accordingly, I will deny the defendant's motion as to Count V.

### C. Breach of Warranty – Count IV

The defendants argue that the plaintiff's claim for breach of warranty should be dismissed because the plaintiff fails to allege a breach of any of the warranties explicitly contained within the Agreements and, instead, alleges breach of oral warranties purportedly extended prior to, or coincident with, the negotiation of the Agreements. Such warranties, the defendants contend, are not included in the warranty provisions in the Agreements, but rather, are unequivocally excluded by the Agreements. After a careful review of the Agreements and the amended complaint, I must disagree.

On page 4 of the Software Master Agreement, under Section V entitled, "Warranties and Disclaimers," in paragraph 5.1.2, ProfitCenter "represents and warrants that it will provide the Service in a manner consistent with general industry standards reasonably applicable to the provision thereof and that the Service will perform substantially in accordance with the online [ProfitCenter] help documentation under normal use and circumstances." <u>See</u> Document #1 at 28. Likewise, on page 3 of the Professional Services Agreement, under Section 5 entitled, "Indemnity, Warranty, Remedy, Limitation of Liability," in paragraph 5.2A, ProfitCenter "warrants that the Professional Services will be performed in a professional and workmanlike manner, in accordance with generally accepted industry standards." <u>See</u> Document #1 at 36. The plaintiff repeatedly alleges throughout the amended complaint that the defendants' performance was inconsistent with industry standards, and that those deficiencies breached the warranties in the Agreements. <u>See</u> Am. Compl. at, *inter alia*, ¶¶ 17, 20, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33. These repeated allegations are sufficient to suggest plausibly that the plaintiff is entitled to relief, and satisfy the simple requirements of Rule 8. Accordingly, I will deny the defendants' motion as to Count IV.

### D. Unjust Enrichment – Count VI

The plaintiff alleges that the defendants have received various payments from the plaintiff for services and items which have not functioned properly or have never been received by the plaintiff. <u>See</u> Am. Compl. ¶ 93. Thus, the plaintiff argues, the

defendants' receipt of those monies is unjust under the circumstances.  Id. at ¶ 94.  The defendants argue that the plaintiff's unjust enrichment claim should be dismissed because such a claim is unavailable where an express written agreement governs the relationship of the parties.

The elements necessary to prove that a party is entitled to recovery on the basis of the equitable doctrine of unjust enrichment are: (1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value.  Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 277 (3d Cir. 2007) (citing Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000)).  In other words, to sustain a claim of unjust enrichment, the plaintiff must show that the defendants either wrongfully secured or passively received a benefit that would be unconscionable for them to keep without compensating the plaintiff.  See Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d. Cir.1987) (providing that the doctrine of unjust enrichment addresses situations where one party received a benefit that would be unconscionable to retain without compensating the provider).  An unjust enrichment claim is subject to the "basic tenet of equity jurisprudence" that "if an adequate remedy at law exists, equitable relief will not be granted."  Goadby v. Philadelphia Elec. Co., 639 F.2d 117, 122 (3d Cir. 1981).  Adequacy of the remedy is determined by availability, not by likelihood of success on the

merits.  <u>Tudor Dev. Grp., Inc. v. U.S. Fid. & Guar. Co.</u>, 968 F.2d 357, 364 (3d Cir. 1992)

(citing <u>Willing v. Mazzocone</u>, 393 A.2d 1155, 1158 (Pa. 1978)).

 As the plaintiff notes, the Federal Rules of Civil Procedure contemplate pleading

in the alternative.  <u>See</u> FED.R.CIV.P. 8(d)(2) ("A party may set out two or more statements

of a claim or defense alternatively or hypothetically, either in a single count or defense or

in separate ones").  Under Pennsylvania law, however, the doctrine of unjust enrichment

is inapplicable when the relationship between the parties is founded on a written

agreement or express contract.  <u>Hershey Foods</u>, 828 F.2d at 999 (quoting <u>Benefit Trust</u>

<u>Life Ins. Co. v. Union Nat'l Bank of Pittsburgh</u>, 776 F.2d 1174, 1177 (3d Cir. 1985).

Where an express contract governs the relationship between the parties, a party's recovery

is limited to the amount provided in the express contract and where the contract fixes the

value of the services involved, there can be no recovery under unjust enrichment.

<u>Hershey Foods</u>, 828 F.2d at 999; <u>see also</u> <u>Van Orman v. American Ins. Co.</u>, 680 F.2d 301,

312 (3d Cir. 1982).

 Here, it is uncontested that the plaintiff and ProfitCenter executed fully-integrated,

written contracts, which exclusively governed the purchase and implementation of

ProfitCenter's system and services.  Neither party claims that the contract was either

invalid or unenforceable.  Thus, because an adequate remedy at law exists, the plaintiff is

precluded from alternatively pleading a claim for unjust enrichment against Defendant

ProfitCenter.  Accordingly, I will grant the defendants' motion to dismiss the unjust

enrichment claim against ProfitCenter.

The plaintiff, however, brings the claim for unjust enrichment against both defendants.  While I have permitted the plaintiff's claim for breach of contract against Systemax to proceed at this stage of the litigation, it cannot be said that the alleged oral contract between the plaintiff and Systemax provides for the same remedy at law as the contract between the plaintiff and ProfitCenter.  In fact, Systemax denies that a contract even existed.  Under these circumstances, Pennsylvania's bar against alternate pleading in a case governed by an express contract does not apply, and the claims for breach of contract and unjust enrichment against Systemax can coexist at this early stage of litigation.  Accordingly, I will deny the defendants' motion to dismiss the unjust enrichment claim as to Systemax.

An appropriate Order follows.